IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN TOTTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-111 |
| | ) |
| CHUBB CORPORATION and GREAT NORTHERN | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION
# AND
# ORDER OF COURT

Plaintiff, Helen Totty ("Plaintiff"), alleges claims for breach of contract and bad faith against Defendants Chubb Corporation, doing business as Chubb Group of Insurance Companies ("Chubb"), and Great Northern Insurance Company ("Great Northern") (collectively "Defendants"). Specifically, Plaintiff seeks to recover under a homeowner's insurance policy for alleged damage to her property and also contends that Defendants acted in bad faith in violation of Pennsylvania law.

Pending before the Court is a Motion for Summary Judgment filed by Defendants seeking dismissal of Plaintiff's claims in their entirety. (Docket No. 22). Plaintiff opposes Defendants' Motion. (Docket No. 26). After careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motion

1

for Summary Judgment (Docket No. 22) is granted in part and denied in part.

## I. **BACKGROUND**

### A.  **Factual Background**

Unless otherwise indicated, the following material facts are undisputed.  I will view any disputed facts in the light most favorable to Plaintiff.

Plaintiff resides at 4303 Bigelow Boulevard, Pittsburgh, Pennsylvania, 15213, a 100 year old home.  Plaintiff was issued a policy of insurance covering the period from January 4, 2002 to January 4, 2003 ("Policy").[1]  Defendants claim that the Policy was issued by Defendant Great Northern, and the Coverage Summary Page of the Policy identifies Great Northern as the issuer of the Policy.  Plaintiff, however, alleges that the Policy was issued by Defendant Chubb.  The Policy provided coverage for Plaintiff's residence at 4303 Bigelow Boulevard and its contents, subject to the Policy's terms and conditions.

On or about September 9, 2002, Plaintiff submitted a Property Loss Notice indicating that her dwelling had been damaged by vibrations from construction equipment used by the City of Pittsburgh in July 2002 to resurface Bigelow Boulevard.  The alleged damage listed included cracked walls, damaged door frames, and plumbing leaks.  The notice also indicated that it appeared the right side of the dwelling was sinking.  See Docket No. 24, Ex. B.

Property Adjuster Tim Cusick was assigned to investigate and handle Plaintiff's

---

[1]  A copy of the Policy is attached as Exhibit A to Plaintiff's Answer to Defendant's Concise Statement of Material Facts.  (Docket No. 25, Ex. A).

claim.  On October 16, 2002, Lorey Caldwell of Rudick Engineering provided Cusick

with a report that stated, in part, as follows:

> No ground vibration related damages were observed throughout the residence.  Most of the cracking observed throughout the house was recent, and related to foundation settlement induced by the extended and ongoing dry weather throughout the summer.  Other cracking damages were localized in nature, and could be correlated to plumbing problems and leaks in various locations of the house, typical residential construction details, and normal settlement, movement, and shifting that can be found to various degrees of severity in similar houses built in this climate.
> . . .
>
> No evidence of Minor level scissor cracking was observed in any of the plaster walls or ceilings.  Although the owner reported Major level concrete and masonry cracking to the foundation walls, concrete sidewalks and patios, the quarry tile at the front entrance, and the concrete block walls of the detached garage, most of the reported cracking was not recent, and none of the cracking was related to the construction activities.

Docket No. 24, Ex. D, p.5 ("Rudick Report").  Plaintiff admits the existence of the

Rudick Report but disputes the Report's conclusions.

On November 19, 2002, Cusick sent a letter to Plaintiff denying coverage for

the structural property damage portion of Plaintiff's claim.  Id., Ex. E.  Defendants

contend that Cusick relied on the Rudick Report and the Structural Movement and

Earth Movement exclusions in the Policy in denying coverage.  Cusick did not receive

a response from Plaintiff to the November 19 letter.  On December 17, 2002, Cusick

wrote a follow-up letter reiterating his position and advising that he would review

any claim relating to fallen pictures and other personal property damage.  Id., Ex. F.

3

On December 23, 2002, Cusick received a letter from Plaintiff dated December 10, 2002, indicating that Plaintiff was having the Rudick Report reviewed by an architect and his structural engineer and that she was retaining her own experts and counsel to pursue her claim.  Id., Ex. G.  Cusick followed up by letter dated January 30, 2003, requesting that Plaintiff's counsel contact him and reiterating that  the insurer would consider any additional information relating to coverage.  Id., Ex. H.

In a letter dated April 15, 2003, Plaintiff's counsel indicated to Cusick that he and Plaintiff were engaging experts to inspect the damage to Plaintiff's property and to respond to the Rudick Report.  Id., Ex. I.  Cusick again requested that Plaintiff submit her position in writing and provide expert documentation if she was disputing the insurer's coverage position.  Id., Ex. K.  On May 12, 2003, Plaintiff's counsel sent a letter to Cusick expressing surprise at Cusick's request.  Id., Ex. L.

In a letter dated August 28, 2003, Plaintiff's counsel informed Cusick that they were concluding the investigation into the cause of the damage to Plaintiff's home and that, "[a]ssuming the results of the final investigation" supported the preliminary conclusions, the loss would total $1.3 million in addition to a contents claim and incidental claims.  Id., Ex. N.  On September 10, 2003, Cusick wrote to Plaintiff's counsel indicating he still had not received any documentation supporting another cause of loss, and suggesting that the parties and the experts meet to resolve any differences. Id., Ex. O.  Plaintiff admits receiving this letter and a follow-up letter dated October 10, 2003, but she did not respond to either letter.

On November 10, 2003, Cusick sent a letter to Plaintiff's counsel stating he was

4

closing the file.  Approximately four months later, Plaintiff filed the instant lawsuit. After she filed suit and over three years after the alleged damage occurred, Plaintiff produced a report prepared by Morris Knowles & Associates and Pennsylvania Soil & Rock, Inc. ("Morris Knowles Report"). Id., Ex. R.  The report concluded that Plaintiff's house was built on soils known as the Carmichaels Deposit, and that vibratory waves from the construction equipment (a double drum vibratory compactor) caused the loose to medium dense sand layer in the Carmichaels Deposit to densify, causing the very stiff to hard silty clay layers above the sand layer to settle over time, eventually affecting the foundation of the house.

According to Defendants, Great Northern retained another expert, Penn Environmental & Remediation, Inc.,  to review and comment on the Morris Knowles Report.  In November 2005, Penn Environmental & Remediation concluded that the settlement of Plaintiff's property is the likely result of the shrinkage of expansive clay soil on which Plaintiff's home was built and related to the reduced moisture content of that soil in 2002.  Id., Ex. U.  In addition, the insurer retained a structural engineer, Randal Exley of ARRCA, to inspect Plaintiff's home.  In a December 29, 2005 Report, Exley agreed with the Rudick Report that the cracking was caused by normal thermal expansion and contraction and differential expansion and contraction between materials with differing expansion coefficients.  Exley also observed, inter alia, that the house showed no signs of ongoing settlement damage and concluded that the claimed damages to Plaintiff's plaster walls and trim was caused by the effects of long-term deflection ("creep") of the wood framing members.  Id., Ex. V.

## B.  Procedural Background

On or about March 11, 2004, Plaintiff commenced this action via Writ of Summons in the Court of Common Pleas of Allegheny County.  Plaintiff filed a Complaint against Defendants in that same court on January 4, 2005.  On January 31, 2005, Defendants removed the case to this Court.  (Docket No. 1).  On March 18, 2005, Plaintiff filed a First Amended Complaint against Defendants.  (Docket No. 8). Defendants answered Plaintiff's First Amended Complaint on March 28, 2005. (Docket No. 9).  On January 30, 2006, Defendants filed the instant Motion for Summary Judgment, Brief in Support, and Concise Statement of Material Facts. (Docket Nos. 22-24).[2] On February 28, 2006, Plaintiff filed a Brief in Opposition, as well as a Statement of Facts and Answer to Defendants' Statement of Facts.  (Docket Nos. 25, 26).  Defendants filed a Reply Brief and Response to Plaintiff's Statement of Additional Material Facts on March 20, 2006.  (Docket Nos. 32, 33). Defendants' Motion is now ripe for my review.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and

---

[2]  On March 9, 2006, I struck Defendants' Brief in Support because it exceeded my 20-page limit.  Defendants filed a conforming Brief on March 13, 2006.  (Docket No. 31).

upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion.  <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987).   The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id</u>.  Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  <u>Id</u>. at 324.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### III.  **LEGAL ANALYSIS**

### A.  **Chubb As Defendant**

Defendants argue that Chubb should be dismissed as a defendant because there is no evidence that Chubb was a party to Plaintiff's insurance contract. Therefore, Defendants argue, Chubb cannot be liable to Plaintiff on her breach of contract or statutory bad faith claims.  I agree.

Under Pennsylvania law, "one cannot be liable for a breach of contract unless one is party to that contract."  Lockhart v. Fed. Ins. Co., No. Civ. A. 96-5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998) (internal quotations omitted) (citing Pennsylvania law).  Similarly, 42 Pa. Cons. Stat. Ann. § 8371 allows a claim only for bad faith conduct "toward the insured" by "the insurer."  Lockhart, 1998 WL 151019, at *4 (citing 42 Pa. Cons. Stat. Ann. § 8371). Two factors are relevant in determining who is the insurer: (1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer.  Brown v. Progressive Ins. Co., 860 A.2d 493, 498 (Pa. Super. Ct. 2004).

Defendants cite the Lockhart case quoted above in support of their argument for dismissal.  In Lockhart, the plaintiff sued Federal Insurance Company and Chubb & Son Inc. on breach of insurance contract and bad faith theories.  Defendants moved for partial summary judgment as to the claims against Chubb on the grounds that Chubb was not a party to the insurance contract.  The district court in Lockhart

granted the motion, finding that "[t]he plain language of the policy categorically identifie[d] Federal as the party which agreed to provide plaintiff with coverage." Id. at *3.  The court also held that there was no evidence that Chubb had "alter ego" status, was the "de facto" insurer of plaintiff, or was an "agent" of Federal for purposes that would make Chubb the insurer under plaintiff's policy.  Id. at **3-4. In this regard, the court noted that the fact that Federal and other affiliated companies used stationery with a common Chubb Group letterhead or forms copyrighted by Chubb did not make Chubb a party to the insurance contract Id. at *3.  The fact that Chubb "provides loss adjustment services for Federal and other affiliates" likewise did not make it a party to each underlying insurance contract. Id.

I agree with Defendants that the case at hand is analogous to Lockhart.  Not only do both cases involve a Chubb affiliate, but as in Lockhart, Totty's policy categorically identifies Great Northern as the insurer.  Specifically, the policy defines the words "we" and "us" as used in the policy as "the insurance company named in the coverage summary."  Policy at A-1.  The Coverage Summary, in turn, states that the policy was issued by Great Northern.   Also as in Lockhart, Chubb is not mentioned anywhere in the substantive terms of the contract.  Nor has Plaintiff offered any evidence that Chubb was the alter ego, de facto insurer, or agent of Great Northern.  Furthermore, Great Northern readily admits that it is the insurer, and there is no showing that Chubb operated with regard to Great Northern in a fraudulent manner which would deprive Totty of a legal remedy. See Lockhart, 1998 WL 151019, at *3 & n.1.

9

Plaintiff's attempts to distinguish <u>Lockhart</u> and create an issue of fact as to whether Chubb was an "insurer" are unavailing.  First, Plaintiff's evidence does not show that Chubb was identified as the insurer on the policy documents.  For example, Plaintiff cites to the fact that Chubb letterhead was used on other documents and correspondence.  As the court in <u>Lockhart</u> stated, however, this fact does not make Chubb a party to the insurance contract.  Plaintiff's reliance on the language of Chubb's privacy policy attached to the contract also is misplaced. Plaintiff is correct that the privacy policy states that "Chubb has been serving the insurance needs of our customers for more than a century."  Docket No. 25, Ex. A. The privacy policy, however, defines "Chubb" as the "following companies on whose behalf this notice is given."  <u>Id.</u>  Included in the ensuing list are a number of companies, including Great Northern (and not including Chubb Corporation or the Chubb Group of Insurance Companies).   Contrary to Plaintiff, I find that this definition supports, rather than undermines, Defendants' position that Defendant Chubb is not the insurer.  Plaintiff's reference to the "signatures" page of the policy likewise is unavailing.   The "signatures" page contains signatures under a list of several named companies, including Great Northern.  <u>Id.</u>  Although three of these companies have the word "Chubb" in their name, neither the Chubb Corporation nor the Chubb Group of Insurance Companies is among those listed.  I also find that the reference to the policy as a "Chubb Masterpiece Policy" and  the statements on the premium renewal summaries stating "thank you for insuring through Chubb" are

insufficient to create an issue as to whether Defendant Chubb was the insurer, especially given the plain language in the policy to the contrary.

Plaintiff also has failed to produce evidence that Defendant Chubb "acted as" the insurer in this case.  In support of her argument in this regard, Plaintiff notes that:  her claim was handled by Tim Cusick, of Chubb's claim department; the Rudick Report was addressed to Chubb; and opposing counsel asked her during her deposition if she "turned her claim into Chubb."  Plaintiff also notes that letters from Cusick state that "Chubb evaluates damages on a covered loss, not a non-covered loss."  This "evidence," even if true, is simply insufficient to create a genuine issue of material fact.  None of the documents cited by Plaintiff specifically identify Chubb as the insurer or otherwise contradict the policy language.  Moreover, as set forth above, simply because Chubb may provide loss adjustment services for Great Northern does not make it a party to each underlying insurance contract.  Lockhart, 1998 WL 151019, at *3.  Further, the Cusick letters to which Plaintiff cites specifically refer to Great Northern as the insurer.  See, e.g., Docket No. 24, Ex. C (". . . the policy of insurance issued to you by Great Northern . . . "); Ex. E (identifying Great Northern as the insurance company and indicating "Great Northern Insurance Company further reserves all rights and defenses which it may have to disclaim coverage . . ."); Ex. M (identifying insurance company as Great Northern).

Finally, I disagree with Plaintiff that the Pennsylvania Superior Court's opinion in Brown compels a different result.  Although the court in Brown found a genuine issue as to the insurer's identity, the facts of Brown are distinguishable from the

facts in this case.  Most significantly, unlike Totty's policy and the policy in <u>Lockhart</u>, the policy in <u>Brown</u> did not specifically identify the insurer or the company issuing the policy.  Indeed, the <u>Brown</u> court specifically distinguished its facts from <u>Lockhart</u> in this regard.  <u>Brown</u>, 860 A.2d at 499-500.

In short, I do not find any evidence sufficient to create a genuine issue of material fact as to the identity of the insurer in this case.  Accordingly, Defendants' Motion for Summary Judgment is granted to the extent it requests that I dismiss Chubb Corporation d/b/a the Chubb Group of Insurance Companies from this case.

## B.  <u>Breach of Contract Claim</u>

At issue in this case is whether the alleged damage to Plaintiff's residence is covered under her homeowner's insurance policy.  Although the parties disagree as to the cause of the alleged damage, Defendant argues that even accepting Plaintiff's theory of causation as true for summary judgment purposes, the loss falls within the Policy's "earth movement" and "structural movement" exclusions and, therefore, is not covered.  Defendant further argues that Plaintiff has failed to produce evidence showing a causal link between the July 2002 vibrations and specific structural damage.  Plaintiff responds that the structural/earth movement exclusions do not apply under her theory of causation (i.e., that the vibratory compactor used to repave Bigelow Boulevard caused densification of sand layers in the underlying soil, resulting in damage to the home), and that the evidence is more than sufficient to create a genuine issue of material fact as to causation.  I will address each of these arguments in turn.

1. **Applicable Legal Standards**

The parties agree that Pennsylvania law applies in this case.  The Pennsylvania Supreme Court has set forth the principles governing interpretation of an insurance contract:

> Review is aimed at ascertaining the intent of the parties as manifested by the language of the written instrument. Where the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument.  If the policy language is clear and unambiguous, we give effect to the language of the contract.
>
> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.

Steele v. Statesman Ins. Co., 607 A.2d 742, 743 (Pa. 1992) (citations and internal quotations omitted).  The task of interpreting a contract is generally performed by the court, rather than a jury.  J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004).  In ascertaining the parties' intent, I must consider the entire contractual provision at issue and not simply individual terms utilized in the insurance contract. 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005).  Further, whether an ambiguity exists in a contract cannot be resolved in a vacuum, but must instead be considered in reference to a specific set of facts.  Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978 (Pa. 2001).  When, as here, an exclusion is asserted, it is the insurer's burden to show that the exclusion defeats coverage under the particular facts of the case.  Madison Constr. Co. V. Harleysville Mut. Ins. Co., 735 A.2d 100, 106

(Pa. 1999).

### 2. **Earth Movement Exclusion**

Defendant denied coverage in this case due to, <u>inter alia</u>, the following earth movement exclusion:

> **Earth Movement.**  We do not cover any loss caused by earth movement including volcanic eruptions, landslides, mud flows, and the sinking, rising, or shifting of land.  But we do cover losses caused by the eruption of a volcano when the loss is the result of:
>
> • a volcanic blast or airborne shock waves;
>
> • ash, dust, or particulate matter; or
>
> • lava flow.
>
> We also insure ensuing covered loss due to fire, explosion, theft, or glass breakage unless another exclusion applies.

Policy at B-8.  The exclusions section of the Policy states that "[t]he words 'caused by' mean any loss that is contributed to, made worse by, or in any way results from that peril."  <u>Id.</u> at B-6.  Defendant cites the earth movement exclusion in support of the summary judgment motion.

The Supreme Court of Pennsylvania analyzed a substantially similar "earth movement" exclusion in <u>Steele v. Statesman Insurance Co.</u>  In <u>Steele</u>, homeowners sought coverage under their insurance policy for damage to their home sustained when the hillside in their rear yard collapsed because the rear-yard neighbor overbuilt, overloaded, and overburdened the hillside shared by both properties.

14

The insurer had denied coverage on the basis of the policy's "earth movement" exclusion.  607 A.2d at 742.

Although the lower courts had agreed with the insurer that the "earth movement" exclusion barred recovery for the loss, the Pennsylvania Supreme Court reversed, finding that the exclusion in the policy at issue was ambiguous.  Id. at 743.  The Supreme Court explained:

> On one hand, the provision bars coverage for natural events, ie., earthquakes and volcanic eruptions.  On the other hand, the provision bars coverage for events which can be natural, man-made or both, ie., landslide, mudflow, earth sinking, rising or shifting.  Although it is arguable that the exclusion is applicable to earth movement due to natural and man-made events, a reasonable insured could conclude that the exclusion is applicable to earth movement due to natural events only.  Since the earth movement exclusion is reasonably susceptible to different constructions, it is impossible to determine the intent of the parties as manifested by the written language of the contract of insurance.

Id.  The court also found instructive the principle of ejusdem generis (of the same kind or class), which means that:

> "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically mentioned."

Id. (quoting Black's Law Dictionary at 270 (5th ed. 1983)).  Construing the ambiguous provision in favor of the insured and in light of the principle of ejusdem generis, the

court held that the earth movement exclusion barred "coverage for damage (loss) from earth movement due to natural events only."  Id.

Defendant's only argument as to why the Steele analysis should not apply to the earth movement exclusion in Totty's policy is that the "Extra Coverages" section of Totty's policy specifically grants coverage for mine subsidence.  The mine subsidence portion of the "Extra Coverages" section also states that "[t]he exclusions of loss caused by structural movement, and earth movement in this policy do not apply to mine subsidence."  Policy at B-6.  Defendant reasons that mine subsidence is a man-made event and, therefore, the earth movement exclusion must cover both natural and man-made events, or the section on mine subsidence would be mere surplusage. Defs.' Br. at 10.  I disagree.  Although it is important to look at the contract as a whole in construing its terms, I find that the "Extra Coverage" provision for mine subsidence is insufficient to render the earth movement exclusion unambiguous.  Even where an earth movement provision itself specifically excludes mine subsidence (which Totty's policy does not), courts have found the exclusion to be ambiguous.  See, e.g., Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082 (Fla. 2005). If Great Northern truly intended to exclude damage for earth movement caused by man-made events, it easily could have done so clearly and unambiguously.

In short, I do not find any material distinction between the earth movement exclusion contained in Totty's policy and the earth movement exclusion at issue in Steele. Accordingly, for the reasons set forth above and in Steele, I find that the earth movement exclusion in Totty's policy bars coverage for damage from earth

movement due to natural events only.  Because Totty's evidence, if believed by the fact-finder, would support a conclusion that her home was damaged as a result of the densification of her soil due to man-made events (i.e., vibrations from road construction equipment), Defendant's motion for summary judgment on the basis of the "earth movement" exclusion is denied.[3]

### 3.  **Structural Movement Exclusion**

Great Northern also denied coverage in this case under the following structural movement exclusion:

> **Structural Movement.**  We do not cover any loss caused by the settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings except loss to glass that is part of a building, storm door, or storm window.   But we do insure ensuing covered loss unless another exclusion applies.

Policy at B-6.  Again, the exclusions section of the Policy states that "[t]he words 'caused by' mean any loss that is contributed to, made worse by, or in any way results from that peril."  Id.

Defendant argues that summary judgment in its favor on Plaintiff's coverage claim is appropriate in light of this exclusion.  Specifically, Defendant contends that, even under Plaintiff's theory of causation, the settlement and/or cracking of the foundations, walls, floors, or ceilings of Plaintiff's home contributed to or aggravated her loss.  Therefore, even accepting Plaintiff's version of the facts as

---

[3]  I make no ruling as to whether the earth movement exclusion would apply under Defendant's theory of causation.

true, the plain language of the structural movement exclusion and the prefatory language defining the phrase "caused by" exclude Plaintiff's claim from coverage as a matter of law.  Defs.' Br. at 7-9.  Plaintiff disagrees, arguing that the "structural movement" exclusion must be read to exclude only settlement resulting from natural processes.  After careful review, I agree with Plaintiff that Defendant's construction of the Policy is overly broad.[4]

The parties agree that Pennsylvania appellate courts have not directly addressed the specific language contained in the structural movement exclusion in Totty's policy, and my independent research has revealed none.  Thus, my role is to predict how the Pennsylvania Supreme Court would rule if confronted with the same facts. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 528 n.3 (3d Cir.1997).  After reviewing the language of the Policy, the parties' arguments, and case law from other jurisdictions, I agree with Plaintiff that the term "settling" in the structural movement exclusion does not apply to the damage Totty's home suffered, at least under Totty's theory of causation.

The Policy does not define the term "settling."  When a term is undefined, I must construe it in accordance with its natural, plain, and ordinary meaning. Cordero v. Potomac Ins. Co. of Ill., 794 A.2d 897, 900 (Pa. Super. Ct. 2002) (citing Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975 (Pa. 2001)).  Where a policy is reasonably susceptible of two interpretations, it is to be construed in favor of the insured and

---

[4]  The fact that both parties agree, descriptively speaking, that the home "settled" is not dispositive.  That Plaintiff and her expert describe the loss in terms of "settling" does not mean that settling within the meaning of the contract was the cause of the damage.  See West v. Umialik Ins. Co., 8 P.3d 1135, 1138 (Alaska 2000).

not to defeat coverage.

Here, Defendant argues that any settlement or cracking is sufficient to trigger the "structural movement" exclusion, regardless of cause. Plaintiff, on the other hand, contends that the term "settling" as used in her policy was only intended to exclude damage caused by the normal, gradual, readjustment of building materials as a result of normal design deficiencies or soil conditions, and not to exclude damage precipitated by a sudden non-natural occurrence such as the vibrations from the road construction equipment outside her home.

As an initial matter, I question Defendant's current position that the structural movement exclusion was intended to cover the specific damage at issue here. In particular, it is curious to me why, if Great Northern truly believes the structural movement exclusion applies to preclude coverage even under Plaintiff's theory of causation, it proceeded to engage two separate experts to respond to Plaintiff's expert's report, both of whom concluded that the damage was caused by factors other than the densification of the soil due to the vibrations from the construction equipment. If Great Northern truly interpreted the contract to exclude Plaintiff's loss even under Plaintiff's theory of causation, the Penn Environmental and ARCCA reports would have been unnecessary.

In any event, even if Defendant's stated interpretation of the exclusion is accurate and reasonable, so too is Plaintiff's. Other courts interpreting similar policy exclusions likewise have so held. See, e.g., Winters v. Charter Oak Fire Ins. Co., 4 F. Supp. 2d 1288, 1294 (D.N.M. 1998) ("'Settling' has generally been taken to mean a

19

gradual, natural process that every building endures. When the settling occurs from an accidental cause and happens abruptly and unexpectedly, that is not the sort of 'settling' to which the policy language refers."); Ariston Airline & Catering Supply Co. v. Forbes, 511 A.2d 1278, 1286 (N.J. Super. Ct. Law Div. 1986) (exclusion would not apply to damage resulting from application of some external force or unusual event as opposed, e.g., to "the natural and expected settling of the building"); Holy Angels Acad. v. Hartford Ins. Group, 487 N.Y.S.2d 1005, 1007 (N.Y. Sup. Ct. 1985) (reasonable to construe exclusion to apply only to "the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of its construction materials" and not to apply to cracking and separation of walls and ceilings related to blasting and dewatering of earth beneath plaintiff's property occasioned by nearby construction of a subway system); Shaffer v. Phoenix Ins. Co., 21 Pa. D. & C. 2d 79, 82-83 (Pa. Ct. Com. Pl. 1960) (settlement exclusion applied only to deterioration due to obsolescence or resulting from the ravages of time and the vagaries of the weather).[5]

Because the structural movement exclusion is reasonably susceptible to different interpretations, it is ambiguous and must be construed in favor of the insured.  Accordingly, I find that the term "settling" in the structural movement exclusion does not encompass damage precipitated by a sudden non-natural occurrence such as the vibrations from the compactor outside Plaintiff's home.

---

[5]  In addition to settlement, Defendant argues that the structural movement exclusion applies because Plaintiff's damage was caused by cracking.  I find that my analysis of the term "settling" would apply equally to the term "cracking."  Even if it did not, as I understand Plaintiff's claim, cracking was a result, not a cause.  See Ariston Airline & Catering Supply Co., 511 A.2d at 1286.

Because there are genuine issues of material fact as to causation, this portion of Defendant's motion for summary judgment is denied.[6]

### 4. **Causation and Damages**

Defendant argues that summary judgment in its favor on Plaintiff's breach of contract claim is warranted because Plaintiff has failed to produce any expert testimony showing a causal link between the July 2002 vibrations and specific structural damage and, therefore, cannot establish that she sustained any damages as a result of these vibrations.  Defs.' Br. at 11-13.  I disagree.

Although Defendant has produced evidence that Plaintiff's home did not suffer damage as a result of vibrations from the July 2002 paving project, Plaintiff has put forth her own evidence suggesting the contrary.  For example, Plaintiff has produced the Morris Knowles Report, which specifically concludes that she suffered damage to her home as a result of vibrations from the compactor which caused the Carmichaels Deposit under her home to densify.  Docket No. 24, Ex. R.  This evidence is sufficient to create a genuine issue of material fact on causation and damage.

---

[6] In their primary brief, Defendant notes the potential application of the efficient probable cause doctrine to Plaintiff's claim.  Under the efficient proximate cause doctrine, a loss is covered under an insurance policy when the loss is caused by a covered peril even where excluded perils also contributed to the loss.  See Marks v. Lumbermen's Ins. Co., 49 A.2d 855, 856 (Pa. Super. Ct. 1946).  Defendant argues that the efficient proximate cause doctrine does not apply here because the exclusions section of the policy defines "caused by" to mean "any loss that is contributed to, made worse by, or in any way results from [the excluded] peril."  Defs.' Br. at 7-9.  Plaintiff's only response to this argument is that the prefatory language cannot broaden the exclusion unless the event at issue comes within the meaning of the exclusion in the first place.  Pl.'s Br. at 9-10.  I agree.  Because the occurrence in this case does not constitute "settling" or "structural movement" within the meaning of the policy at all, the prefatory language is inapplicable.  See Winters v. Charter Oak Fire Ins. Co., 4 F. Supp. 2d 1288, 1294 (D.N.M. 1998).  Plaintiff does not respond to Defendant's broader argument that contractual language may be used to abrogate the proximate cause doctrine, and I do not address it here.

Defendant argues that the Morris Knowles Report is insufficient because it "fails to specifically identify the structural damage allegedly caused to Plaintiff's residence as a result of these vibrations."   Defs.' Br. at 12.   To the extent this argument is even relevant to summary judgment, it is without merit.   The Morris Knowles Report specifically states that the authors of the report visited the Totty residence and examined the structural distress described in Defendant's first expert report, the Rudick Report, which was prepared in October 2002, shortly after the road construction at issue.   Morris Knowles Report at 3.   The referenced portions of the Rudick Report describe in detail each specific item of structural damage that Plaintiff alleges the vibrations caused.   The Morris Knowles Report then states that:

> Based on our observations of the structural distress described in the table (pp. 8 to 23) of the [Rudick] Report, we concur with Mr. Caldwell's assessments of the causes of damages, except for the cases where "foundation settlement from the prolonged dry weather" are cited.  It is our opinion that the cause of the observed structural distress for these cases is differential settlement but not as the result of the prolonged dry weather.

Morris Knowles Report at 3.   Clearly, the Morris Knowles Report is referring to the specific structural damage reported by Defendant's expert.[7]

For all of these reasons, this portion of Defendant's summary judgment motion is denied.

---

[7] Defendant also challenges Plaintiff's additional expert reports, the Crawford and Siudyla Reports, which opine on the cost to restore Plaintiff's home.  Docket No. 24, Exs. S-T.  As set forth above, the Morris Knowles Report is sufficient evidence on the causation and damages issue for Plaintiff to survive summary judgment.  The specific amount of damages is not relevant for summary judgment purposes and I do not express any opinion here on the relevance and/or admissibility of the Crawford and Siudyla Reports at trial.

5. **Land Stabilization Clause**

Finally, Defendant argues that "[a] portion of Plaintiff's claim may involve the excavation, replacement and/or stabilization of land." Defs.' Br. at 10. Great Northern then states that even assuming Plaintiff sustained a covered loss to her home, the company is only required to pay up to 10% of the amount of that covered loss for the excavation, replacement or stabilization of the land. Id. In support, Defendant cites to several Policy provisions, including the Extra Coverages section, which provides that:

> Whenever there is a covered loss to your house or other permanent structure and the related repair or rebuilding requires excavation, replacement, or stabilization of land under or around your house or other permanent structure, we will also pay up to 10% of the amount of the covered loss to your house or other permanent structure for the excavation, replacement, or stabilization of the land.

Policy at B-4.

Defendant's "argument" is merely a restatement of the above-quoted policy provision and is immaterial for purposes of summary judgment. While Plaintiff does not dispute Defendant's characterization of the land reconstruction coverage, she asserts in her Brief that she is not claiming damages for stabilization of the land, but for stabilization of the foundation of the home. Thus, under Plaintiff's view, the 10% limitation is irrelevant. Plaintiff further asserts that any costs for land excavation, replacement, or stabilization would be less than 10% of the covered loss, again rendering the limitation a non-factor. To the extent Defendant disputes Plaintiff's position, these are issues of fact, more appropriately resolved at trial.

23

## C. **Bad Faith Claim**

Great Northern  argues that summary judgment in its favor is appropriate with respect to Plaintiff's bad faith claim.  This portion of Great Northern's Motion is granted.

As an initial matter, I disagree with Defendant's argument that the bad faith claim fails because there is no coverage for Plaintiff's structural damage claim and, therefore, Great Northern could not have acted in bad faith in denying the claim. Defs.' Br. at 15.  As set forth above, the Motion for Summary Judgment on the coverage issue is denied.  Thus, I cannot dismiss the bad faith claim on this basis.

Great Northern, however, also argues that the bad faith claim fails because Plaintiff cannot establish by clear and convincing evidence that the company acted in bad faith in denying her claim.  Defs.' Br. at 16-18.  Here, I agree.

The Pennsylvania statute governing bad faith insurance actions provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

>> (2) Award punitive damages against the insurer.

>> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

Although the statute does not define the term "bad faith," the Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt the definition set forth by the Pennsylvania Superior Court in Terletsky v. Prudential Property & Casualty Insurance Co., 649 A.2d 680 (1984). Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121 (3d Cir. 2005) (citing Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000)). In Terletsky, the court held that to recover on a bad faith claim, the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. 649 A.2d at 688. Mere negligence or bad judgment on the part of the insurer is insufficient to constitute bad faith. Id.

Pennsylvania law requires the insured to prove bad faith by clear and convincing evidence. Babayan, 430 F.3d at 137 (citing Terletsky, 649 A.2d at 688). "At the summary judgment stage, the insured's burden in opposing a summary judgment motion is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" Id. (quoting Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), aff'd, 234 F.3d 1265 (3d Cir. 2000)).

Here, no reasonable jury could conclude that Plaintiff has shown, by clear and convincing evidence, that Great Northern acted in bad faith in denying her claim. To the contrary, the evidence supports Great Northern's position that it had a reasonable basis to deny the claim. As an initial matter, Plaintiff did not inform

Great Northern of her current theory of causation until several years after the road paving project and after she filed this lawsuit.  Plaintiff initially contended that the vibrations from the construction equipment directly caused the damage to her home.  Defendant promptly investigated this claim by, inter alia, engaging an expert (Rudick Engineering) to inspect Plaintiff's property and provide an opinion as to the cause of the alleged damage.  Rudick Engineering concluded that the damage was not caused by the vibrations and that the damage primarily was related to foundation settlement induced by dry weather throughout the summer.  Great Northern immediately relayed this information to Plaintiff and repeatedly indicated that it would consider any information she may have indicating a contrary result.  Despite the correspondence from Defendant attempting to work with her regarding her claim, Plaintiff did not submit any contrary evidence to the insurer until after she filed this lawsuit.

Even after Plaintiff provided Defendant with the August 2005 Morris Knowles report concluding that vibrations from the road equipment densified the soil, causing the house to "settle," Great Northern employed two additional experts to investigate this new theory of causation.  Although these experts differed as to the actual cause of the damage, both rejected Plaintiff's expert's densification theory.  Although I agree with Plaintiff that there may be coverage if the jury accepts her theory of causation, Plaintiff does not argue (at least for summary judgment purposes) that she is entitled to coverage under any of Defendant's experts'

theories.  Thus, Defendant continues to have a reasonable basis to deny Plaintiff's claim.

Plaintiff also has failed to produce evidence to support her argument that Defendant's investigation of her claim was inadequate.  In this regard, Plaintiff suggests that Rudick Engineering's evaluation was insufficient, and it was unreasonable for Defendant to rely on the Rudick Report to deny her claim.  I disagree.  As an initial matter, Plaintiff does not cite to any record evidence to support her attacks on Rudick Engineering's methodology and conclusions.  Rather, she relies solely on her own speculation and subjective opinions as to what an expert should do.  Moreover, even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them.[8]  See, e.g., Pirino v. Allstate Ins. Co., No. 3:04CV698, 2005 WL 2709014, at *5 (M.D. Pa. Oct. 21, 2005); Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

I also disagree with Plaintiff that Defendant's continued position that the structural movement and earth movement exclusions preclude coverage is evidence of bad faith.  While these exclusions may not apply under Plaintiff's theory of causation, Plaintiff has not shown that one and/or both exclusions would be inapplicable if a jury were to accept Defendant's causation theories.  Because the cause of the alleged damage to Plaintiff's home remains fairly debatable, it is not

---

[8]  Even Plaintiff no longer contends, as she did at the time of the Rudick Report, that the vibrations directly caused the damage to her home.

bad faith for Defendant to maintain its initial defenses to coverage.  The fact that Defendant argued, for purposes of summary judgment, that the exclusions at issue would apply even under Plaintiff's causation theory does not change this result. There simply is no evidence that Defendant advanced this argument to evade its obligations under the policy as opposed to defend itself in the lawsuit Plaintiff filed against it.  See W.V. Realty Inc. v. Northern Ins. Co., 334 F.3d 306, 313-15 (3d Cir. 2003); O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 909 (Pa. Super. Ct. 1999); see also Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 360 (E.D. Pa. 1997) (aggressive defense of insurer's interests is not bad faith).

In short, based on the evidence of record, I find that no reasonable jury could conclude that Great Northern lacked a reasonable basis for denying Plaintiff benefits under her policy.  Even if Great Northern did not have a reasonable basis, there is no evidence that the company knew of or recklessly disregarded this lack of reasonable basis in denying the claim.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's bad faith claim is granted.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is denied as to Plaintiff's breach of contract claim and granted in all other respects.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HELEN TOTTY,                 )
                                    )
          Plaintiff,        )
                                      )
   -vs-                       )
                                    Civil Action No. 05-111
                                    )
CHUBB CORPORATION and GREAT NORTHERN   )
INSURANCE COMPANY,           )
                                    )
          Defendants.      )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **28th** day of August, 2006, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that Defendants' Motion for Summary Judgment (Docket No. 22) is GRANTED in part and DENIED in part as follows:

1.  The Motion is granted to the extent it seeks to dismiss the Chubb Corporation, d/b/a the Chubb Group of Insurance Companies, as a Defendant in this action.  The Chubb Corporation, d/b/a the Chubb Group of Insurance Companies, is hereby dismissed as a Defendant in this action, with prejudice.

2.  The Motion is granted, and summary judgment is entered in favor of Defendant and against Plaintiff, with respect to Count III

of Plaintiff's First Amended Complaint (bad faith under Pa. Cons.

Stat. Ann. § 8371).

3.  The Motion is denied in all other respects.

It is further Ordered that counsel attend a pretrial/settlement conference scheduled for Wednesday, September 7, 2006, at 3:00 P.M. before the undersigned in Room 3280 of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.  Counsel shall have settlement authority and parties are to be either present or available by telephone.

It is also Ordered that at least three (3) business days prior to the pretrial/settlement conference, counsel for every party shall submit  a position letter to this Court.  The position letter shall set forth the following:  (a) A brief recitation of the facts; (b) A discussion of your party's strengths and weaknesses; and (3) Your party's settlement posture. To ensure candor, the position letters are not to be filed nor shared with opposing counsel, but rather, are to be faxed directly to this Court's Chambers at (412) 208-7357.  All position letters will be kept confidential.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge